UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALEC ERNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00524-RLY-MG |
| | ) | |
| BOARD OF TRUSTEES OF | ) | |
| INDIANA UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO NON-PARTY MOTION TO QUASH
SUBPOENA AND REQUEST FOR FEES

Comes now Plaintiff Alec Erny, by counsel, and responds to Non-Party Madeline

Moore's Motion to Quash Subpoena and Request for Fees as follows:

BACKGROUND

Madeline Moore is a non-party witness in this case, which is set for a jury trial

commencing on September 10, 2024. Plaintiff listed her as a witness on their Final

Witness List [Dkt. 104], and as such, she was also listed on Defendant's Witness List

("Any witness called by Plaintiff Alec Erny or listed on his Final Witness list." [Dkt.

112]). On August 12, 2024, she was served with a subpoena to appear at the trial of this

case. [See Ex. A – Certified Mail Receipt and USPS Tracking; see also Dkt. 127-1 at ¶ 4

(affidavit of Madeline Moore stating that "the package containing the subpoena was

signed for by my apartment building's doorman around August 12, 2024.")][1] At 3:16

---

[1] "[E]mployees of apartment complexes, such as doormen and landlords, may satisfy the requirements
for abode service under Rule 4(e). *See Robinson Eng'g Co. Pension Plan & Tr. V. George*, 223 F.3d 445, 453

p.m. on Friday, September 6, 2024 – 25 days after service of the subpoena and leaving only one intervening business day before the beginning of the trial – Ms. Moore moved to quash the subpoena and seeks fees. [Dkt. 126] The motion is untimely and fees are inappropriate. The motion should be denied.

DISCUSSION

A.  *Ms. Moore's Motion to Quash should be denied as untimely.*

Federal Rule 45 governs subpoenas and describes how to quash or modify them. The first requirement for a motion to quash for seeking attendance by a person "beyond the geographical limits specified in Rule 45(c)" is that it is "timely". Fed. R. Civ. P. 45(d)(3). "[T]he Federal Rules do not define 'timely' and courts within the Seventh Circuit have yet to conclusively determine what constitutes a timely filing." *Allstate Ins. Co. v. Orthopedic, P.C.*, No. 1:22-mc-00016-JPH-MJD, 2022 U.S. Dist. LEXIS 42485, at *7 n.3 (S.D. Ind. Mar. 9, 2022).

> [S]ome courts have required that a motion to quash within 14 days, *see e.g., Edli v. Garner Family Enters., Inc.*, No. 1:11-CV-1300, 2012 U.S. Dist. LEXIS 12564, 2012 WL 364088, at *1 (S.D. Ind. Feb. 1, 2012). Other courts have required that a motion to quash be made "at or before the time of compliance." *Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.*, 2009 U.S. Dist. LEXIS 92917, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009). Still other courts have determined that the district court has discretion to decide whether a motion to quash is considered timely. *See, e.g., Woodard v. Victory Records, Inc.*, 2014 U.S. Dist. LEXIS 69512, 2014 WL 2118799, at *4 (N.D. Ill. May 21, 2014) (concluding that, "[w]hile the court does not wish to condone a party's failure to challenge a subpoena within the time delineated by the rules," the conduct between the parties indicated that the time for compliance had not yet lapsed).

---

(7th Cir. 2000) (abode service can be accomplished when the documents are 'left with cooks, doormen, and other personal service provides' so long as it is 'clear that the person who received the complaint and summons had some relationship to the person for whom service was intended and some duty to pass along mail and other documents to that person.')" *Hensiek v. Bd. of Dirs. of Casino Queen Holding Co.*, No. 3:20-cv-377-DWD, 2024 U.S. Dist. LEXIS 34656, at *12-14 (S.D. Ill. Fe. 28, 2024).

*Castelino v. Rose-Hulman Inst. of Tech.*, No. 2:17-cv-00139-WTL-MJD, 2018 U.S. Dist. LEXIS 131470, at *4 (S.D. Ind. Aug. 6, 2018).

Ms. Moore's Motion to Quash should be considered untimely because more than three weeks elapsed between service of the subpoena in question and her motion to quash, and there is only one business day left before the trial begins. Plaintiff's counsel were not even made aware of Ms. Moore's objections until yesterday (Thursday, September 4), when her attorney sent an email to them. [Dkt. 127-2 at 9] Plaintiff's counsel promptly replied, stating "We . . . are happy to tender her the witness fee + IRS rate for mileage in order for her to appear in person. Alternatively, we propose that Ms. Moore be able to testify via Zoom. We have 2 others appearing that way, and I do not think it will be an issue to request this of the Court again." [Id. at 5] Ms. Moore rejected both of these solutions ("I have spoken with my client and we will be proceeding with a motion to quash and protective order."). [Id. at 4]

B. *The subpoena should be modified, not quashed.*

In the covering letter to Ms. Moore, Plaintiff's counsel stated: "Should you have any questions, please do not hesitate to contact [us] at the address or phone number listed on this letterhead." [Dkt. 127-1 at 5] This, coupled with the emails from Attorney Alonso to Ms. Moore's attorney, demonstrates that Plaintiff was open to creative solutions for obtaining Ms. Moore's testimony and that Plaintiff wanted to cause as little burden/disruption to Ms. Moore as possible. Obviously, it was entirely within Ms. Moore's prerogative to obtain outside counsel to review the subpoena, and Plaintiff certainly does not question or challenge her motives on those grounds, but her

3

insistence in quashing the subpoena and seeking a protective order (none has been filed yet) rather than agreeing to testify, or even engaging in a discussion about testifying, by Zoom is telling. [Dkt. 127-2 at 4-5]

      A discussion with Ms. Moore would likely be fruitful. First, to reassure her about the nature of the questions she would be asked in relation to this case (i.e. nothing about the events underlying the Title 9 investigation, but rather discrete facts about the Title 9 investigation itself). And second, to determine the extent of her connection with Indiana. As is clear from the cover letter to Ms. Moore, Plaintiff did not know whether she resided in Chicago or Bloomington (the subpoena was sent to both locations), and more facts are needed about where she was between August 12, 2024 and September 2, 2024, if her doorman was truly unable to deliver the package to her for that entire time. [Dkt. 127-1] Ms. Moore stated that she was employed full-time in Chicago and that she did "not work in Indiana and [does] not regularly conduct business there." [Dkt. 127-1 at ¶¶ 12, 13] But Ms. Moore works remotely. [Ex. B – Proof of Non-Service by Christopher Rodriguez ("I called and spoke with Madeline, who stated she is not at the office that she works remotely.")] And she has strong ties to Indiana; on information and belief, her parents live in Northern Indiana, and she seems to have other relatives in the Indianapolis area [Ex. C – LEXIS SmartLink Person Report at 4-9] It is less than 2 hours from Chicago to Granger, Indiana – where Ms. Moore's parents seem to live – it is not at all unreasonable to think that she works remotely for a Chicago company from one of her relatives' homes in Indiana – especially as she seems to only occasionally collect her mail in Chicago.

Because of the confusion with Ms. Moore's address(es) (indeed, the Lexis Public Records search provided her current address as being 223 North Morton Street, Bloomington, Indiana, and listed no Chicago address for her at all [Ex. C at 2]) and the willingness of Plaintiff to obtain Ms. Moore's testimony remotely (which Fed. R. Civ. P. 43 may allow), the subpoena should be modified, rather than quashed.

The subpoena could be modified so that Ms. Moore could participate remotely – just as she works, and as other witnesses in this case are participating.

Rule 45 specifies that a "subpoena may command a person to *attend* a trial ... within 100 miles" of where they reside or work. Fed. R. Civ. P. 45(c)(1)(A) (emphasis added). When a witness is testifying via video from their home city, they are *attending* the trial from exactly where they sit, which would be within 100 miles of where they reside. If the operative subpoena authority tied the attendance directly to the physical location of the trial—for instance, if a subpoena could only command witnesses to attend *at the location* of a trial if the witnesses lived or worked within 100 miles of the trial's location—then the witnesses' attendance could not be commanded. But the text is different: the witness' *attendance* of the trial is happening within 100 miles of the witness' residence or workplace.

The Advisory Committee's notes to the 2013 amendment of Rule 45 support this interpretation because the notes focus on the burdens of *travel*. The notes specify that "Rule 45(c)(1)(A) does not authorize a subpoena for trial to require a party or party officer *to travel* more than 100 miles unless the party or party officer resides, is employed, or regularly transacts business in person in the state." Fed. R. Civ. P. 45, 2013 Advisory Committee Notes (emphasis added). The reference to *travel* to a physical location confirms that the Advisory Committee's concern when amending Rule 45 in 2013 was on limiting the actual movement required of an individual who was subpoenaed to testify at a trial (or other proceeding). So the purpose of the 100-mile geographic limitation is to prevent the burden imposed by physical movement on non-party witnesses who would otherwise be compelled to traverse a long distance to appear for proceedings. These burdens do not apply with remote testimony.

Indeed, the Advisory Committee's notes explaining the similar measurement point for the 100-mile rule as applied to parties and in-state residents in Rule 45(c)(1)(B) confirms this intent. Rule 45(c)(1)(B) says that

a subpoena may command witnesses to attend a proceeding in the state in which they reside, are employed, or transact business if the witnesses "would not incur substantial expense." The notes then explain that "party witnesses can be required to *travel* more than 100 miles within the state where they reside, are employed, or regularly transact business in person only *if they would not, as a result, incur 'substantial expense*,'" but that even enforcement of a longer distance can be conditioned on payment of the expense by the subpoena-serving party. Fed. R. Civ. P. 45, 2013 Advisory Committee Notes (emphases added). Here again the Committee's concern is physical "travel," and the burdens associated with it.

*Gray v. City of Chi.*, No. 1:18-CV-02624, 2023 U.S. Dist. LEXIS 195080, at *22-24 (N.D. Ill. May 8, 2023).

There is good cause and there are compelling reasons to permit Ms. Moore to attend the trial remotely. Ms. Moore is a crucial witness for Plaintiff, as she was the complaining witness in the case underlying Defendant's discriminatory Title 9 investigation into Plaintiff, and she will be able to testify about benefits, concessions, and/or considerations that she received that Plaintiff did not. The jury will benefit from hearing firsthand about how she (a woman) was treated so that they can compare it to how Plaintiff (a man) was treated.

As with the other witnesses appearing remotely, modifying the subpoena to permit remote attendance would avoid any undue expense and inconvenience associated with travel. And the contemporaneous transmission of the testimony provides many of the benefits of in-person testimony. Allowing the remote attendance would align with the Court's preference towards live testimony and outweigh any burden placed on the witnesses. Additionally, neither party will be substantially affected by the requested remote testimony and both parties will have the same opportunity to examine and cross-examine Ms. Moore.

C. *The matter of the fee.*

Although Plaintiff's omission of the fee with the original subpoena was an honest oversight based on a mistaken belief that it could be tendered once exact mileage could be ascertained (and Plaintiff did not know where Ms. Moore lived for sure, as evidenced by the double-addressed cover letter and the results of the Lexis search for her [Dkt. 127-1 at 5]), and although Plaintiff promised to send the fee forthwith (see email of Annemarie Alonso [Dkt. 127-2 at 5]), Ms. Moore may insist on strict compliance with this part of the Rule. *See Brewer v. Town of Eagle*, 663 F. Supp. 3d 939, 944-45 (E.D. Wis. 2023) ("[p]rovision of payment after receipt of the subpoena will not suffice.") If the fee is found to be the only true impediment to the power of the subpoena, Plaintiff will promptly correct this error by serving the subpoena (with any modifications the Court might order) upon Ms. Moore through her attorneys, per her instructions to the process server [Ex. B ("She also stated to contact her lawyer that she is not going to accept the papers.")]

D. *Sanctions are not warranted.*

Without citation to any authority, Ms. Moore seeks sanctions based, primarily, on the fact that Plaintiff "[knew] how far Moore lived from the courthouse" and the failure to include the fee. To this, Plaintiff states that he did *not know* where she lived. If he had *known*, he would not have sent a subpoena to two different addresses – one in Chicago and one in Bloomington. Secondly, the omission of the fee is discussed above, and as Ms. Moore is so far refusing to testify at all, the lack of the fee can hardly be prejudicial to her interests.

Rule 45 has built within it a remedy for when a subpoena seeks to compel a person from outside the 100-mile limit – it requires a *timely* motion and the remedy is to quash or modify the subpoena. Sanctions against Plaintiff are also inappropriate based on the failure to enclose the required fee – this oversight does not rise to the level of "imposing undue burden or expense on the person subjects to the subpoena." Fed. R. Civ. P. 45(d). First, the cover letter welcomed Ms. Moore to call the offices of Plaintiff's counsel with any questions she might have had. [Dkt. 127-1 at 5] Second, Plaintiff's counsel offered to send payment immediately when Ms. Moore's attorney brought it up. [Dkt. 127-2 at 5] Finally, the email chain attached to the Motion to Quash plainly demonstrates that Plaintiff was open to doing whatever was necessary to avoid as much burden and expense for Ms. Moore as possible, including using Zoom for her testimony. [Id. at 3-5] Ms. Moore states that she has incurred legal fees, but does not state that these fees constitute an "undue burden or expense" upon her.

CONCLUSION

For the foregoing reasons, the Motion to Quash should be denied.

Respectfully,


s/ *Jonathan Little*
Jonathan Little, jon@sllawfirm.com
Annemarie Alonso, annie@sllawfirm.com
SAEED & LITTLE, LLP
#189 – 133 West Market Street
Indianapolis, IN 46204
(317) 721-9214

*Counsel for Plaintiff Alec Erny*